IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ronald F. Cameron, #279627, | C/A No.: 1:10-1278-HFF-SVH |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| Jerry Cox, Chief of Darlington City Police Dept.; Daniel L. Watson, Capt. of Darlington City Police Dept.; M. August, Detective of Darlington City Police Dept.; M. Valazak, Officer of Darlington City Police Dept.; Tonya C. Little, Asst. Public Def. of Darlington County, | |
| Defendants. | |

Plaintiff Ronald F. Cameron ("Plaintiff"), who is proceeding *pro se* in this action, is an inmate at Broad River Correctional Institution. Plaintiff has alleged claims of violations of his constitutional rights, which are construed as brought pursuant to 42 U.S.C. § 1983. Defendants Cox, Watson, August, and Valazak are all employees of the Darlington City Police Department ("Police Defendants"). Defendant Little was Plaintiff's public defender action in his criminal case related to the incident alleged in the complaint. Before the court are the following motions: (1) Police Defendants' Motion for Summary Judgment [Entry #25]; and (2) Defendant Little's Motion for Summary Judgment [Entry #30]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment are dispositive, this Report and Recommendation is entered for review by the district judge.

I.      Factual and Procedural Background

Plaintiff filed his complaint in state court on April 26, 2010. Defendants removed the action to this court on May 18, 2010. The Police Defendants filed their motion for summary judgment on August 18, 2010 and Defendant Little filed her motion for summary judgment on August 26, 2010. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. [Entry #26, #32]. Plaintiff filed a response in opposition to Defendants' motions. [Entry #36]. Having carefully considered the parties' submissions and the record in this case, the court recommends that Defendant Little's Motion for Summary Judgment [Entry #30] be granted and the Police Defendants' Motion for summary judgement [Entry #25] be granted as to Cox and denied as to Watson, August, and Valazak.

In his complaint, Plaintiff alleges he was arrested on April 25, 2008 and charged with grand larceny and burglary of defendant Cox's residence. Plaintiff claims the following day:

> That plaintiff was taken by Defendant Watson to the Darlington County's City Police Dept. where he was taken to an isolated room, and in spite of his protests and attempts to refuse, he was ordered by Defendant Watson to open his mouth, after which, Defendant Watson then proceeded, with his hands, to roughly swab the insides of the plaintiff's mouth while Defendant Valazak stood directly over the plaintiff as to insure that plaintiff complied.

Compl. ¶ 5 [Entry #5]. Defendants acknowledge a DNA sample was taken on April 26,

2

2008 ("the first DNA sample" or "the April 26, 2008 DNA sample"), but argue Plaintiff consented to the sample.

Plaintiff further claims that at a subsequent hearing in the criminal case against him, Police Defendants requested the judge allow a new DNA sample be taken. He complains that his attorney, defendant Little, did not inform the court that a sample had previously been taken illegally and instead argued only that a future sample would violate his constitutional rights. Compl. ¶¶ 11–15.  According to Plaintiff, he informed the court about the previous sample, but as the court had no record of the prior sample, it allowed a second DNA sample be taken ("the second DNA sample"). *Id*. at 16–19.  Plaintiff was subsequently tried and convicted of burglary in the first degree. *Id.* at 19–21.  He now brings causes of action for (1) illegal search and seizure; and (2) conspiracy.  Plaintiff seeks damages, including damages for pain and suffering.  Plaintiff does not appear to be challenging the legality of the second DNA sample, as he does not seek relief from his criminal conviction and the damages portion of the complaint refers only to the allegations surrounding the first DNA sample.

II.     Discussion

    A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden,

then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.     Defendant Little's Motion for Summary Judgment

Defendant Little argues Plaintiff's action against her, which is construed as brought pursuant to 42 U.S.C. § 1983, should be dismissed because she has not acted "under the color of state law." The undersigned agrees.

In order to state a cause of action under 42 U.S.C. § 1983, Plaintiff must allege that he was deprived of rights, privileges, or immunities secured by the Constitution and the laws of the United States by a person acting under color of state law. *See* 42 U.S.C. § 1983. A public defender, while performing a lawyer's traditional function as counsel to an indigent defendant in a state criminal proceeding, is not acting under the color of state law. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). Therefore, it is recommended that Plaintiff's claims against Little should be dismissed.[1]

C.     Police Defendants' Motion for Summary Judgment

Police Defendants argue they are entitled to summary judgment because (1) Plaintiff has failed to exhaust his administrative remedies; (2) emotional stress is not compensable under § 1983; (3) Police Defendants are entitled to Eleventh Amendment immunity; (4) Police Defendants cannot be held liable on a respondeat superior theory; (5) recovery by Plaintiff would necessarily imply the invalidity of Plaintiff's sentence and is therefore barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (6) Plaintiff's claims are barred by the *Rooker-Feldman* doctrine; (7) Plaintiff has not set forth evidence of a conspiracy; (8) Plaintiff's

---

[1] To the extent Plaintiff is alleging a state law conspiracy claim against Little, the same is addressed below with regard to all Defendants.

claims fail because Police Defendants did not act with the purpose of inflicting pain and Plaintiff consented; and (9) Police Defendants are entitled to qualified immunity.  Each of these arguments is addressed seriatim.

    1.    Exhaustion of Administrative Remedies.

Police Defendants claim that Plaintiff was required to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. 1997e(a).  The undersigned disagrees. Specifically, 42 U.S.C.A. § 1997(e) states: "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Here, Plaintiff's complaint does not concern prison conditions, but rather concerns an alleged improper seizure with regard to the underlying charge against him.  Therefore, because Plaintiff's claims do not concern prison conditions or the general circumstances concerning Plaintiff's incarceration, the PLRA does not apply.

    2.    Emotional Distress

Among his damages, Plaintiff seeks recovery for "mental anguish," "fear," "humiliation" and "disgrace." Defendants argue such items are not recoverable in a 42 U.S.C. § 1983 action.  There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. *See Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985); and *Rodriguez v. Comas*, 888 F.2d 899, 903 (1st Cir. 1989). This is true regardless of

whether a plaintiff is a free citizen or an incarcerated individual. *See, e.g., Lynch v. Falsely*, C/A No. 3:09-81-CMC-JRM, 2009 WL 398073, *3 (D.S.C. Feb. 17, 2009); *Mitchell v. Cannon*, C/A No. 2:07-3259-PMD-BM, 2009 WL 824202, *18 (D.S.C. March 26, 2009).

However, even in the absence of actual damages, Plaintiff may be able to recover nominal damages for violation of a constitutional right. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n. 11 (1986); *see also Reyes v. City of Lynchburg*, 300 F.3d 449, 453 (4th Cir. 2002) ("Nominal damages may be available in a § 1983 case if a plaintiff was deprived of an absolute right yet did not suffer an actual injury."); *Williams v. Griffin*, 952 F.2d 820, 825 n. 2 (4th Cir. 1991) (concluding that "in the absence of a showing of actual injury, [plaintiff] would still be entitled to nominal damages upon proof of a constitutional violation"). Therefore, although the undersigned agrees with Police Defendants that Plaintiff is not entitled to damages for emotional distress, this fact does not foreclose Plaintiff's recovery of nominal damages.

### 3. Eleventh Amendment Immunity

Police Defendants argue they are entitled to Eleventh Amendment immunity because they are arms of the state. Assuming, without deciding, that Police Defendants would be entitled to Eleventh Amendment immunity, they have waived the same by virtue of removing this case to federal court. A states's voluntary appearance in federal court amounts to a waiver of its Eleventh Amendment immunity. *See Clark v. Barnard*, 108 U.S. 436, 447 (1883); *Lapides v. Board of Regents of the Univ. System of Georgia*, 535 U.S. 613, 619 (2002). As the Supreme Court stated:

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand.

*Lapides*, 535 U.S. at 619. Therefore, the Police Defendants have waived any immunity they possessed by virtue of the Eleventh Amendment.

### 4.    Respondeat Superior Liability

Police Defendants next argue that they are not liable to the extent Plaintiff's claims are based upon a respondeat superior liability. Plaintiff makes direct factual allegations against defendants Watson, August, and Valazak, so it does not appear his claims against these defendants are based on a theory of respondeat superior. However, Plaintiff makes no specific factual allegations against Cox.

The doctrine of *respondeat superior* generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142–43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, *Reed v. Slakan*, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Cox was personally responsible for any of the incidents

or acted in any way other than a supervisory role. Further, Plaintiff has not shown that Cox was deliberately indifferent to, or tacitly authorized, any of the actions or inactions of the remaining defendants. Thus, Plaintiff has fails to show that Cox is liable on a theory of respondeat superior or supervisory liability, and it is recommended that the claims against Cox should therefore be dismissed.

### 5. Application of *Heck v. Humphrey*

Defendants claim that *Heck v. Humphrey*, 512 U.S. 477 (1994) bars the current action. In *Heck*, the United States Supreme Court specifically held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. 477 (1994). A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. In other words, an individual convicted of a crime cannot bring a civil suit challenging the conviction and resulting imprisonment until and unless the conviction is overturned. *Heck v. Humphrey* creates a new rule of exhaustion in § 1983 litigation. *Id.*

In this case, Plaintiff contends that the first DNA sample was seized illegally in violation of the Fourth Amendment. However, this DNA sample was not used against Plaintiff, as a second DNA sample, which was authorized by the court, was ultimately used

9

to convict Plaintiff. Therefore, a judgment that the first DNA sample was obtained illegally would not invalidate Plaintiff's conviction. Therefore, Plaintiff's claim that the first DNA sample was obtained in violation of the Fourth Amendment is not barred by *Heck*.[2]

      6.      The *Rooker-Feldman* Doctrine

According to the Fourth Circuit, "the *Rooker-Feldman* doctrine applies . . . when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006). In the case at hand, Plaintiff does not attack a decision of a state court. Plaintiff's claims are based upon an alleged violation of Plaintiff's Fourth Amendment rights when Watson, August, and Valazak took the first DNA sample, the results of which were not used for trial purposes. Additionally, Plaintiff did not file a case in federal court; rather, Defendants removed the case. Therefore, the *Rooker-Feldman* doctrine is inapplicable here.

      7.      Conspiracy

Plaintiff asserts a cause of action for conspiracy. "To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [his] deprivation of a constitutional right." *Marshall v. Odom*, 156 F.Supp.2d 525, 532 (D.Md. 2001) (citing *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996)).

---

[2] The undersigned interprets Plaintiff's complaint as alleging only that the April 26, 2008 DNA sample violated Plaintiff's Fourth Amendment rights and therefore makes no recommendation regarding the validity of any claim based on the second sample.

10

To meet the "weighty burden to establish a civil rights conspiracy[,] . . . . [the plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle*, 81 F.3d at 421.  Thus, the "evidence must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id*.  Viewing the facts in the light most favorable to Plaintiff, Watson, August, and Valazak were all present and participated in the alleged violation of Plaintiff's Fourth Amendment rights. A genuine dispute of material fact exists as to whether Watson, August, and Valazak positively and tacitly came to a mutual understanding to illegally seize Plaintiff's DNA sample on April 26, 2008.  Thus, it is recommended that Plaintiff's claim for conspiracy under § 1983 against Watson, August, and Valazak should survive summary judgment.

However, to the extent Plaintiff asserts a state law claim for civil conspiracy, that claim fails.  In South Carolina, the tort of civil conspiracy has three elements: (1) a combination of two or more persons; (2) for the purpose of injuring the plaintiff; and (3) causing plaintiff special damage. *Vaught v. Waites*, 387 S.E.2d 91, 95 (S.C. App. 1989).  "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint," and "because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other cause of action." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 874 (S.C. 2009) (internal citations omitted).  Plaintiff fails to allege additional facts in furtherance of a conspiracy, nor does he allege special damages

11

as a result of the alleged conspiracy. Thus, summary judgment in favor of Defendants is appropriate on any state law claim for civil conspiracy.

        8.       Illegal Search and Seizure Claim

Defendants also maintain that Plaintiff's Fourth Amendment rights were not violated because he consented to the DNA seizure. Defendants Watson, August and Valazak each unequivocally state in their affidavits that Plaintiff consented to the taking of the saliva sample for DNA purposes *See* Watson Aff., ¶ 19; August Aff., ¶ 18; Valazak Aff., ¶ 18 [Entry #25]. Defendants assert Plaintiff was also informed that he did not have to voluntarily submit to the sample taking, but choose to voluntarily consent to same. Watson Aff., ¶ 19; August Aff., ¶ 18; Valazak Aff., ¶ 18. According to Defendants, Plaintiff again stated that he did not have a problem submitting the sample. Watson Aff., ¶ 19; August Aff., ¶ 18; Valazak Aff., ¶ 18.

However, in Plaintiff's verified complaint, he alleges a factually-different version of how the first DNA sample was acquired. The undersigned notes that in this circuit, verified complaints by pro se plaintiffs are considered affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff alleges Watson took him to an isolated room and ordered him to open his mouth "in spite of his protest and attempts to refuse" and then proceeded to swab the inside of his mouth while Valazak stood directly over Plaintiff to insure compliance. Compl., ¶ 5 [Entry #1-1 at 8]. Plaintiff further alleges that he asked Watson and Valazak if they had a warrant and whether he could get a

copy of it, but was told by Watson that they did not need a warrant. *Id.* at ¶ 7. Plaintiff further states in his claims for relief that Watson, August, and Valazak collected his DNA against his will. *Id.* [Entry #1-1 at 12]. Additionally, the complaint states:

> Plaintiff felt helpless and unable to defend against the violation of his body by the Defendants whereas the said Defendants were both armed and Plaintiff was handcuffed and the Defendants were acting in a threatening manner with one said Defendant standing directly over the Plaintiff as to insure their commands to open his mouth.

Compl. [Entry #1-1 at 16]. Based on the record presented, it appears a dispute of fact exists as to whether Plaintiff consented to Defendant's taking the first DNA seizure. The court must view the facts in the light most favorable to the party opposing summary judgment, and it may not make credibility determinations or weigh the evidence. *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002). Therefore, the undersigned recommends denying Police Defendants' motion for summary judgment with regard to this issue.

        9.        Qualified Immunity

Defendants assert, to the extent Plaintiff's constitutional rights were violated, they are entitled to qualified immunity. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by this immunity. The *Harlow* court held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello,* 973 F.2d at 298.

A question of fact exists as to whether Watson, August, and Valazak illegally seized a DNA sample from Plaintiff on April 26, 2008. The right to be free from illegal

14

searches and seizures is clearly established in the law. In addition, viewing the facts in the light most favorable to Plaintiff, defendants Watson, August, and Valazak should have known that they could not seize a DNA sample from Plaintiff in the absence of a warrant or Plaintiff's consent. It is apparent that an officer should refrain from illegally seizing a DNA sample from a citizen and such conduct can not be characterized as a bad guess in a gray area of the law. Thus, Watson, August, and Valazak are not entitled to summary judgment on the basis of qualified immunity.

III.    Conclusion

Based on the foregoing reasons, it is recommended that the Police Defendants' Motion for Summary judgement [Entry #25] be granted as to Cox and denied as to Watson, August, and Valazak. It is further recommended that Defendant Little's Motion for Summary Judgment [Entry #30] be granted.

IT IS SO RECOMMENDED.

January 21, 2010                                         Shiva V. Hodges
Florence, South Carolina                                 United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**